UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CORTAZE RAYSHARD KEGLAR-JOHNSON,

    Defendant.

_____

Case No. 22-CR-20652

Honorable Denise Page Hood

**ORDER DENYING DEFENDANT CORTAZE KEGLAR-JOHNSON'S MOTION TO MODIFY SUPERVISED RELEASE [ECF No. 60]**

## I. INTRODUCTION

Before the Court is Defendant Cortaze Rayshard Keglar-Johnson's *pro se* motion to modify supervised release. [ECF No. 60]. The motion is fully briefed. For the reasons set forth below, the motion is DENIED.

## II. BACKGROUND

On December 20, 2023, Defendant Cortaze Keglar-Johnson ("Defendant" or "Keglar-Johnson") pled guilty to count-one of the Indictment charging Keglar-Johnson with a violation of 18 U.S.C. § 922(g)(1), felon in possession of a firearm. On January 3, 2024, the Court entered a judgement and order sentencing Keglar-Johnson to 30 months of imprisonment followed by a two-year term of supervised

release. [ECF No. 41, PageID.255-256]. Keglar-Johnson's supervised release commenced on February 6, 2025. On June 23, 2025, the Probation Department issued a violation report and an emergency warrant request was filed. [ECF No. 44]. The basis for the warrant request provided that Keglar-Johnson had obtained new criminal charges in violation of his supervised release conditions. *Id*. at 265. That same day, an arrest warrant was issued for violation of supervised release based on those state charges. [ECF No. 45].

The Probation Department issued an amended violation report and petition for warrant on July 7, 2025. [ECF No. 58]. The amended violation report stated that on June 23, 2025, Keglar-Johnson was arraigned in the 36th District Court on the following charges: (1) Count 1, Officer Fleeing-Third Degree; (2) Counts 2-4, Failure to Stop After Collision. [*Id*. at PageID.286]. The amended violation report also noted that Keglar-Johnson violated his supervised release by testing positive for alcohol on April 7, 2025, and testing positive for marijuana on both April 13, 2025, and June 5, 2025. *Id*. On July 15, 2025, the Court held a supervised release violation hearing. On July 23, 2025, this Court entered a judgement and order finding Keglar-Johnson guilty of violating his supervise release by committing another state or local crime. [ECF No. 59, PageID.287]. The Court ordered him detained until residential re-entry placement was available and upon discharge, a sentence of 19 months of supervised release. [*Id*. at PageID.288-289].

On July 31, 2025, Keglar-Johnson filed a motion, *in pro per*, seeking to modify supervise release. [ECF No. 60]. On August 11, 2025, a response in opposition was filed by the Government. [ECF No. 62]. On August 14, 2025, Attorney Rhonda Brazile filed a supplemental brief on behalf of Defendant. [ECF No. 63]. A hearing was scheduled for October 23, 2025. Keglar-Johnson did not have notice and did not appear. The Probation Department issued an updated report for a violation of supervised release and petition for summons. The Court will issue a summons on the new violation report and petition.

### III.   APPLICABLE LAW

The Court must first acknowledge there is no right to hybrid representation. 28 U.S.C. § 1654; see *United States v. Flowers*, 428 F. App'x 526, 530 (6th Cir. 2011). The Sixth Circuit routinely declines to "consider *pro se* arguments where the defendant is represented by counsel[.]" *Id*. The Local Rules provide that an attorney "making a post-indictment appearance shall continue to represent the defendant until the case is dismissed, the defendant is acquitted, or the direct appeal is completed unless the attorney is granted leave to withdraw by the District Court or the Court of Appeals if notice of appeal has been filed." E.D. Mich. L.Cr.R. 57.1(a). "An attorney who has appeared in a criminal case may thereafter withdraw only by written motion served upon the defendant..." E.D. Mich. L.Cr.R. 57.1(b).

3

The court "may modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, ..." 18 U.S.C. § 3583(e)(2); *United States v. Maxwell*, 483 F. App'x 233, 241 (6th Cir. June 13, 2012). A district court may modify or rescind a condition of supervised release after considering certain enumerated § 3553(a) factors, including the circumstances of the crime, the characteristics of the defendant, deterrence, protecting the public, providing the defendant with training and education, and others. See 18 U.S.C. § 3583(e), (e)(2); *United States v. Forrester*, No. 24-5315, 2024 U.S. App. LEXIS 30667, at *3-4 (6th Cir. Dec. 4, 2024).

IV. ANALYSIS

In his *pro se* motion to modify supervise release,[1] Keglar-Johnson argues that because the state charges have been dismissed, he should be released from imprisonment and placed back on supervised release.[2] [*Id*. at PageID.292]. In support of his assertion, Keglar-Johnson attached two redacted emails stating that

---

[1] Generally, the Court does not consider *pro se* motions from defendants represented by counsel. *United States v. Williams*, 641 F.3d 758, 770 (6th Cir. 2011) (striking pro se arguments from a represented defendant); *United States v. Martinez*, 588 F.3d 301, 328 (6th Cir. 2009) (declining to consider a pro se motion from a represented defendant). However, because Keglar-Johnson's attorney filed a supplemental brief in support of his *pro se* motion to modify supervised release, this Court will consider the motion.

[2] Keglar-Johnson was released from custody and placed in Residential Reentry Center ("RRC") on July 30, 2025.

4

the case before the 36th District Court was dismissed, without prejudice, due to the unavailability of the police officer as a witness because he is out on medical leave. *Id*. at 294. Keglar-Johnson seeks release so that he may return to his family that needs him. *Id*.

The Government argues that the Court should deny Keglar-Johnson's motion for three main reasons. First, the Government contends that the facts of the alleged incident that resulted in Keglar-Johnson's state charges are serious. [ECF No. 62, PageID.300]. The facts presented at the hearing before this Court were that Kegler-Johnson fled from police, was involved in an automobile crash, and threatened police officers during his arrest. *Id*. Second, the Government argues that the state charges were dismissed only because of the unavailability of a witness who is currently on medical leave. *Id*. The Government asserts that the case is expected to be reissued once the witness is available. *Id*. Third, the Government argues that the sentencing guidelines called for a term of imprisonment of 8-14 months, but instead the Court sentenced Keglar-Johnson to 90 days in a halfway house. *Id*.

In a supplemental brief filed by Keglar-Johnson's attorney, the Keglar-Johnson affirms that his motion to modify the conditions of supervised release is based on the dismissal of the state-court charges that formed the basis of the violation, as well as his desire to return home to support his family. [ECF No. 63, PageID.303]. Keglar-Johnson's supplemental brief also states that he has been in jail for an extended

5

period of time, approximately 30 days, while he awaits availability to transition to a halfway house.[3] As a result, he requests that the Court reduce the 90-day halfway house condition to account for the time he served in jail while awaiting. *Id*. at 305. In support of his position, Kegler-Johnson relies on *Esteras v. United States*, 145 S. Ct. 2031 (2025). He argues that the Supreme Court "resolved a circuit split involving the Sixth Circuit by deciding that courts may not consider retributive facts in sentencing for evoking supervised release and must only look to the rehabilitative and 'forward-looking' ends of sentencing." *Id*. at 306.

Kegler-Johnson is correct that *Esteras* clarifies that a district court considering whether to revoke a defendant's term of supervised release may not consider 18 U.S.C.S. § 3553(a)(2)(A), which covers retribution considered in the defendant's underlying criminal offense. *Esteras*, 145 S. Ct. at 2034. "So when a defendant violates a condition of supervised release, courts must consider the forward-looking sentencing ends, but may not consider the backward-looking purpose of retribution." *Id*. at 2035. Additionally, Kegler-Johnson notes that the U.S. Sentencing Commission recently adopted amendments to Chapters 5 and 7 of the Guidelines

---

[3] Keglar-Johnson spent 35 days in detention from June 25, 2025, until July 30, 2025, when he was transferred to a halfway house. He then remained at the halfway house for 43 days, from July 30, 2025, until September 10, 2025.

6

Manual concerning supervised release reminding courts to consider the primary purpose of reintegration back into the community. [ECF No. 63, PageID.306-307].

The Probation Department, however, issued an updated report for violation of supervised release. The updated report provided that on September 10, 2025, a review of Keglar-Johnson's Global Positioning System (GPS) tracking locations revealed that he was out of bounds and in violation of Residential Reentry Center ("RRC") program rules. It was determined that Keglar-Johnson went to his residence without authorization from 7:46 a.m. until 7:53 a.m. and did not arrive at his approved location at the Greening of Detroit until 8:51 a.m. At 2:26 p.m., Keglar-Johnson left the Greening of Detroit without authorization and again went back to his residence. He remained at his residence until RRC Staff contacted him by phone to confront him about his program rule violations, and he was instructed to return to the RRC. He returned to the RRC at 5:39 p.m. He was cited for Escape and Return. Due to the program rule violations, Keglar-Johnson has been terminated from the RRC.

## V. CONCLUSION

On October 23, 2025, the Government's attorney and Keglar-Johnson's attorney appeared for a hearing on Keglar-Johnson's motion to modify supervised release. No notice of the hearing, however, was given to Keglar-Johnson. Keglar-Johnson's probation officer stated that Keglar-Johnson's GPS tracking indicated that he was

7

not nearby or en route to the Court. Although the Government had indicated there would be a request for a warrant for Keglar-Johnson's failure to appear, the Government instead requested the Court consider a warrant for the new violation petition, which had not yet been issued at the time of the hearing.

The Court finds Keglar-Johnson's motion for release from detention and the halfway house moot, since he has been terminated from RRC. The Court will issue a summons on the new violation report and petition. Keglar-Johnson is continued on GPS monitoring and all other conditions of supervised release to apply.

## VI.   ORDER

For the reasons stated above,

IT IS ORDERED that Defendant's letter filed on July 31, 2025, construed as a motion for release from detention and the halfway house is moot [ECF No. 60] and therefore DENIED.

IT IS FURTHER ORDERED a summons shall issue on the Violation Report Part:1 Petition for Summons.

IT IS ORDERED that all conditions of supervised release shall continue, including GPS location monitoring.

SO ORDERED.

Dated:  November 25, 2025

s/Denise Page Hood
Denise Page Hood
United States District Judge